In re ESTATE OF Judith Ann
ROSSER, A/K/A Judith
Ann Baker.

**Appeal of Lloyd J. Rosser.**

Superior Court of Pennsylvania.

Submitted July 29, 2002.

Filed April 2, 2003.

Charles M. Watkins, Reading, for appellant.

Laurence M. Kelly, Montrose, for appellees.

Before: JOHNSON, HUDOCK and BECK, JJ.

OPINION BY HUDOCK, J.

¶ 1 This is an appeal by Lloyd J. Rosser (Rosser) from the order of the orphans' court that disposed of his objections to the final accounting of the Estate of Judith Ann Rosser, a/k/a Judith Ann Baker (Decedent), distributed the assets of the estate and denied his election to take against the will, on the basis that the estate was insolvent. For the reasons that follow, we affirm.

¶ 2 Decedent and Rosser married on February 14, 1990. This marriage was Decedent's third marriage and Rosser's second marriage. Decedent had five children from her first marriage, Richard Baker, Linda Baker Welch, Larry Baker, James Baker and John Baker. Rosser had two children from his previous marriage. No children were born during the marriage of Decedent and Rosser.

¶ 3 During December 1993, Decedent was diagnosed with breast cancer. Over the next three years, the cancer metastasized to Decedent's lungs, cervix, lymph nodes and brain. In March 1995, Decedent and Rosser consulted with Malcolm MacGregor, Esquire, regarding a medical malpractice claim against Decedent's treating physicians and hospital for misdiagno-

sis and failure to detect the breast cancer in an earlier mammogram. Subsequently, a medical malpractice lawsuit was filed by Decedent in the Court of Common Pleas of Lackawanna County against her treating physicians and hospital, with a loss of consortium claim included on behalf of Rosser.[1]

¶ 4 By October 1996, Decedent was primarily confined to bed or a wheelchair and required assistance to move about. On October 4, 1996, Decedent, at her request, was removed from the marital residence by her children, Richard and James Baker, and Decedent's identical twin sister, Jean Carter, and taken to the home of Decedent's daughter, Linda Baker Welch, in Springville, Pennsylvania. Thereafter, James Baker, on behalf of Decedent, filed a Petition for Protection From Abuse, and a temporary order was issued against Rosser. A hearing was held on the petition on October 11, 1996, at the conclusion of which the court found abuse had occurred and that Decedent reasonably was in fear of her safety. The court then continued the temporary order for an additional forty-five days in order to obtain an evaluation from the Susquehanna County Aging Services.

¶ 5 On October 23, 1996, Decedent filed a complaint for divorce from Rosser. Additionally, on that date, Decedent executed several other documents. Decedent executed a new will, which disinherited Rosser and provided as her beneficiaries her four children, Linda Baker Welch, Richard Baker, Larry Baker and James Baker.[2] She also entered into an employment contract with her children wherein, in consideration of the children providing food, shelter, comfort, companionship, and protection from Rosser for the rest of her life, the Decedent promised to pay her children the sum of two million dollars. As security for the employment contract, the Decedent also executed mortgages, bonds, a security agreement, an assignment of judgment, an assignment of assets and a bill of sale. These documents transferred all of Decedent's personal property, including all choses in action and lawsuits, to her children.

¶ 6 Decedent died on November 6, 1996. Her will was probated on November 15, 1996, and on January 6, 1997, Rosser filed an election to take against the will. On September 20, 2000, the medical malpractice lawsuit was settled for the sum of $1,350,000.00. On October 24, 2000, Rosser filed a petition to show cause why an account should not be filed in accordance with 20 Pa.C.S.A. section 3501.1. A first and final account was filed on December 14, 2000, and Rosser filed objections to the account on January 2, 2001. Hearings on the objections and Rosser's election to take against the will were held March 12, 2001, and July 2, 2001. After the parties filed briefs in support of their respective positions, the court entered an order January 28, 2002, granting in part and denying in part Rosser's objections to the accounting and his election to take against the will and distributing the assets of the estate. Specifically, the court directed that the funeral expenses and the two million dollar contract between Decedent and her children be paid from the estate assets. The

1. Prior to settlement of the action, Rosser withdrew his loss of consortium claim due to his and the Decedent's separation and pending divorce proceedings.

2. John Baker is an incompetent housed in the State of New York, and he receives assistance from the State for his disability. Evidence of record indicates that Decedent did not include John in her Last Will and Testament because any such bequest would have been recovered by the State of New York.

court further held that the mortgages signed by the Decedent on October 23, 1996, were "void insofar as they seek to encumber any property owned by [Decedent and Rosser] by tenancy by the entireties." Finally, the court directed that while Rosser was entitled to a one-third elective share of the residual value of the estate as a matter of law, because the accounting showed that the estate was insolvent, Rosser's election to take against the will was denied. On February 19, 2002, Rosser filed a petition for reconsideration, which was subsequently denied. This timely appeal followed.[3]

¶ 7 On appeal, Rosser presents the following issue for our consideration:

Is an employment contract between a dying mother and her children by a previous marriage, to provide care and protection to the mother for the remainder of her life, where (a) the funds to pay the children were an expectancy from an unsettled lawsuit, (b) the funds to pay the children were property *in custodia legis*, (c) the contract was the result of undue influence, (d) the contract was unconscionable, (e) the contract was illusory, and (f) under the circumstances the contract was designed to disinherit the dying mother's husband, legally enforceable and sufficient to trump the husband's election to take against wills and conveyances?

Rosser's Brief at 3.

¶ 8 Initially, we note our standard of review of the findings of an orphans' court:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of the discretion.

*In re Estate of Geniviva,* [675 A.2d 306, 310 (Pa.Super.1996)] (internal citations omitted). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree." *Horner v. Horner,* 719 A.2d 1101, 1103 (Pa.Super.1998) (discussing standard of review for courts of equity).

*In re Estate of Harrison,* 745 A.2d 676, 678–79 (Pa.Super.2000), *appeal denied,* 563 Pa. 646, 758 A.2d 1200 (2000).

¶ 9 Before we address Rosser's issue and arguments on appeal, we must first address the Estate's contention that Rosser has waived his claims on appeal as a result of his failure to file post-trial motions pursuant to Pa.R.C.P. 227.1. While Rosser concedes that he did not file post-trial motions, he counters that he was not required to file such and instead has preserved his issue and arguments on appeal by the timely filing of a motion for reconsideration.

---

**3.** We note that the January 28, 2002, order is a final appealable order as the orphans' court, pursuant to Pa.O.C.R. 6.11 (entitled "Confirmation of Accounts. Award."), approved the statement of proposed distribution and specified "the names of the persons to whom the balance available for distribution is awarded and the amount or share awarded to each of such persons." *See Estate of Borkowski,* 794 A.2d 388, 390 (Pa.Super.2002) (providing that "[i]n a decedent's estate, the confirmation of the final account of the personal representative represents the final order, subject to exceptions being filed and disposed of by the court."). *See also* 20 Pa.C.S.A. § 3514; Susqu. O.C. Rule 6.11.

¶ 10 Pa.R.C.P. 227.1 provides that a party shall file post-trial motions within ten days after:

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without jury or equity trial.

Pa.R.C.P. 227.1(c). The Rule further provides that grounds which are not raised in the post-trial motions shall be deemed waived on appellate review. Pa.R.C.P. 227.1(b)(2). While Rule 227.1 has been held applicable in both civil and equity actions, *see Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), it does not apply to the within matter. Rather, Pa.O.C.R. 7.1 governs the procedure for challenging the entry of a final order, decree or adjudication in orphans' court proceedings. Pa. O.C.R. 7.1 provides in relevant part as follows:

(a) **General Rule.** Except as provided in Subdivision (e) [ (Adoptions and Involuntary Terminations) ], no later than twenty (20) days after entry of an order, decree or adjudication, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa. R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions except as provided in Subdivision (d) (Multiple Aggrieved Parties). Failure to file exceptions shall not result in waiver if the grounds for appeal are otherwise properly preserved.

(b) **Waiver.** Exceptions may not be sustained unless the grounds are specified in the exceptions and were raised by petition, motion, answer, claim, objection, offer of proof or other appropriate method.

\*     \*     \*     \*     \*     \*

(g) **Exceptions.** Exceptions shall be the exclusive procedure for review by the Orphans' Court of a final order, decree or adjudication. A party may not file a motion for reconsideration of a final order.

Pa.O.C.R. 7.1(a), (b), (g). Thus, because Rosser was not required to file post-trial motions or exceptions to the January 28, 2002, order, we find that his claims on appeal are not precluded on this basis. However, to the extent that Rosser attempts to raise new theories on appeal due to their inclusion in his motion for reconsideration, we find these arguments waived on two bases. First, Rosser raised these allegations in an improper filing pursuant to Rule 7.1(g). Second, at trial, the only arguments asserted by Rosser were that the employment contract between the Decedent and her children must fail for lack of consideration or, in the alternative, was void as an illusory contract. In his motion for reconsideration, Rosser for the first time challenged the orphans' court's award on the basis that the employment agreement distributed property which was *in custodia legis,* that the documents created on October 23, 1996, were the result of undue influence exerted by the Decedent's children upon her, and that the documents should be determined void as unconscionable and against public policy. Rosser neither mentioned these claims at trial nor presented evidence in support of such claims. Consequently, we find these claims not preserved for our review. *See Boring v. Conemaugh Memorial Hospital,* 760 A.2d 860, 861 (Pa.Super.2000), *appeal denied,* 566 Pa. 632, 781 A.2d 137 (2001) (providing that appellant may not argue a new and different ground on appeal that was not properly raised in the trial court).

Thus, our discussion will be limited to Rosser's claims that the employment contract between Decedent and her children was void for lack of consideration and/or that the contract was illusory.

¶ 11 Rosser first argues that the children's offer to provide support and care for the Decedent did not constitute adequate consideration for the employment contract, hence there could not be a valid assignment of the expectancy of the proceeds from the pending lawsuit by Decedent to her children. Rosser asserts that "it is highly unlikely that the Baker Children were enticed to care for their dying Mother *only if* their Mother promised to pay them. The Baker Children had a moral obligation, though not a legal obligation, to care for their dying Mother." Rosser's Brief at 23. Rosser further posits that "the facts clearly indicate that the Baker Children acted solely to attempt to cut [Rosser] out of any part of the anticipated recovery from the medical malpractice lawsuit which [he and the Decedent] had filed in 1995. *Nothing* which the Baker Children did in this case, can remotely be construed to be characterized by acting in 'good faith' or in 'good conscience.' " *Id.* at 28. Thus, he concludes that the court's determination that the Baker children's employment agreement created a valid lien against the estate was in error. Accordingly, he maintains that the settlement monies from the medical malpractice action should remain part of the estate subject to his spousal election. We disagree.

¶ 12 20 Pa.C.S.A. section 2203 provides that "[w]hen a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of" the deceased's estate including, "[p]roperty conveyed by the decedent during the marriage and within one year of his death to the extent that the aggregate amount so conveyed to each donee exceeds $3,000.00, valued at the time of conveyance." 20 Pa.C.S.A. § 2203(a)(6). However, 20 Pa.C.S.A. section 2205 qualifies that "[c]onveyances and contracts made by the decedent are excluded from the provisions of section 2203 (relating to right of election; resident decedent) ... to the extent that the decedent received adequate consideration therefor in money or money's worth."

¶ 13 The orphans' court, in finding sufficient consideration existed to support the contract, stated:

Courts in the Commonwealth have repeatedly found that an offer to provide support and care constitutes adequate consideration for a contract. *In re Estate of Musselman*, 494 Pa. 571, 431 A.2d 1002, 1005–06 (1981); *In re Estate of Beeruk*, 429 Pa. 415, 241 A.2d 755, 758–59 (1968). Additionally, the courts have found that the possibility that a party may receive more than it expended because of a decedent's unexpected legacy in the future will not, in and of itself, render the agreement invalid for lack of consideration. *In re Estate of Musselman*, 431 A.2d at 1006.

The present case is analogous to the cases cited. The Decedent was terminally ill and unable to care for herself and needed someone to provide the care and assistance that she required. Rosser, her spouse, was unwilling to provide adequate care to the Decedent as evidenced by the Protection From Abuse order that the court had issued against him for his neglectful and abusive conduct toward the Decedent. Therefore, the Decedent had to seek other avenues to receive the required care, and, as a result, she chose her children. The Decedent contracted with her children to provide her with food, shelter, companionship, comfort and protection from Rosser twenty-four (24) hours a day.

After reviewing the record, the court finds that there was valuable consideration in accordance with 20 Pa.C.S.A. 2205, therefore, this contract is excluded from the provisions of 20 Pa.C.S.A. 2203(a)(6) and takes priority over Rosser's right to an elective share.

Orphans' Court Opinion, 1/28/02, at 4–5.

¶ 14 Rosser argues that the court improperly relied upon *In re Estate of Musselman, supra,* and *In re Estate of Beeruk, supra,* in reaching its decision. Specifically, he alleges that these cases are distinguishable in that, in the present case, an employment agreement between a mother and her children for the mother's care is at issue, whereas in the case of *In re Estate of Beeruk* at issue was a contract to make a will between an uncle and his nephew, and in *In re Estate of Musselman* the contract challenged was between an elderly woman and an institution for her care. Although the facts of the cases cited by the orphans' court are not identical to the within action, we find the proposition for which the court cited the cases clearly applicable. In each case, our Supreme Court analyzed whether adequate consideration existed to support a contract. In *In re Estate of Beeruk,* the Court found that Beeruk's promise to leave his estate to his nephew, if his nephew would uproot his family from Poland and bring them to America to look after and take care of him, was a valid contract, which preempted Beeruk's wife's interest as the residuary beneficiary of his will. The Court concluded, "[a]s creditor, the nephew [was] entitled to Beeruk's entire estate leaving nothing for the wife to take against." *Id.,* 429 Pa. at 422, 241 A.2d at 759 (footnote omitted). Similarly in *In re Estate of Musselman,* the Court upheld a contract between a home for the aged and an elderly woman where the woman promised to assign and transfer presently owned or after-acquired property to the home in exchange for the home's promise to provide shelter, care and maintenance for the rest of her life. Our Supreme Court found that the contract was supported by adequate consideration and, as such, an unexpected legacy received subsequent to execution of the contract was recoverable by the home from the woman's estate, notwithstanding that the woman, after receiving the legacy, executed a will leaving her entire estate, including the legacy, to relatives and friends. Accordingly, we find Rosser's argument, that the court improperly relied upon *In re Estate of Musselman* and *In re Estate of Beeruk* in determining that sufficient consideration existed in the present action, devoid of merit.

¶ 15 Moreover, we note "that failure of consideration is an affirmative defense and the burden of proof rests with the party asserting this defense." *In re Estate of Beeruk,* 429 Pa. at 417 n. 1, 241 A.2d at 755 n. 1. Likewise, "one asserting failure of consideration in a contract action must show that the consideration *contemplated* was never received." *Dahar v. Grzandziel,* 410 Pa.Super. 85, 599 A.2d 217, 221 (1991). Rosser has not met his burden in this regard. As the court found, the Baker children performed their part of the bargain and the responsibilities assumed under the employment agreement. The fact that the Decedent lived a mere fourteen days, rather than two years, after entering the employment agreement does not vitiate the consideration under the agreement. Our Supreme Court has stated, "[t]he decedent is best able to determine the terms of his bargain and, in essence to require proof [of the value] of services is to insist that the decedent is not the best judge of the adequacy of the consideration he bargained for." *In re Estate of Beeruk,* 429 Pa. at 421, 241 A.2d at 759. The record reflects that the Decedent was, at all times, competent and un-

derstood the terms of her bargain.[4] Thus, we do not find that the orphans' court erred in determining that sufficient consideration existed to validate the employment agreement between Decedent and her children.

¶ 16 Next, Rosser challenges the employment agreement on the basis that it is illusory. Rosser contends that the language in the employment agreement regarding the children's promise to the Decedent imposes no obligation upon the children to fulfill their part of the bargain, rendering their promise entirely optional. Thus, he concludes that there is no mutuality of obligation and, as such, the contract is illusory and void *ab initio*. We disagree.

¶ 17 The employment agreement provides in part as follows:

WHEREAS, for the past several years, [the Decedent] has been and remains married to [Rosser]; and,

WHEREAS, for the past several years, [Rosser] has been abusive to [the Decedent] in both words and actions; and,

WHEREAS, on several occasions [Rosser] has threatened [the Decedent] with violence and further abuse; and,

WHEREAS, as a result of the said violence, threats and abuse, [the Decedent] has been compelled to seek protection from [Rosser] through an action in Protection from Abuse; and,

WHEREAS, [the Decedent] is fearful and concerned that, notwithstanding the Order of the Court of Common Pleas continuing the previous Order directing [Rosser] to refrain from contacting [the

Decedent, Rosser] will seek out and cause severe physical and emotional harm to [the Decedent]; and,

WHEREAS, [the Baker children] have agreed to defend and protect [the Decedent] from [Rosser] *to the extent that they are able to do so;* and,

WHEREAS, [the Baker children] have agreed to provide food, shelter, companionship, comfort and to be available to provide same twenty four hours per day for the rest of the life of [the Decedent], *to the extent that they are able to do so;* and,

WHEREAS, [the Baker children] will be in danger of physical harm to them and some of them in fulfilling the function of protecting [the Decedent] from [Rosser]; and,

WHEREAS, [the Decedent] wants to make certain that the [Baker children] are adequately compensated for their services in protecting [the Decedent];

NOW, THEREFORE, in and for the consideration of the mutual promises and covenants herein expressed, the [Baker children] [do] agree to do all actions and things necessary to protect [the Decedent] from [Rosser] for the rest of her life, and to provide food, shelter, companionship, [and comfort] to [the Decedent], and to be available to provide same twenty four hours per day for the rest of the life of [the Decedent], *to the extent that they are able to do so;*.

[The Decedent], in turn, agrees to pay to the [Baker children] the sum of TWO MILLION ($2,000,000.00) DOLLARS,

---

**4.** At the hearing in this matter, Ms. Laura Libero, a neighbor and friend of the Decedent, testified that during the month preceding Decedent's death she visited her "almost everyday" and that the Decedent "knew exactly what was going on up until the day she died." N.T., 7/2/01, at 51, 57. Testimony also revealed that on October 23, 1996, there were at least twelve individuals present at the time the Decedent executed the employment agreement.

which amount is and shall be a debt owed by [the Decedent to the Baker children].

Employment Contract, 10/23/96, at 1–2 (emphasis added).

¶ 18 In determining whether a contract's terms are illusory, this Court has explained:

> A contract is evidenced by a mutuality of obligation. A mutuality of obligation exists when both parties to the contract are required to perform their respective promises. If a mutuality of promises is absent, the contract is unenforceable. A promise to perform or to forebear from performing must be supported by consideration. If the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable. The promisor has committed him/herself to nothing.

*Geisinger Clinic v. Di Cuccio, M.D.*, 414 Pa.Super. 85, 606 A.2d 509, 512 (1992) (citations omitted). Moreover, "[t]he fact that one party is given an option not accorded to the other does not per se, render such contract void for lack of mutuality of obligation." *Best v. Realty Management Corp.*, 174 Pa.Super. 326, 101 A.2d 438, 440 (1953). "[T]he mere fact that the option prevents the mutual promises from being coextensive does not prevent both promises from being binding according to their respective terms." *Id.* (Emphasis omitted).

¶ 19 In the present case, we find the challenged terms of the employment agreement sufficiently definite to withstand a claim of being illusory. While the phrase "to the extent that they are able to do so" qualifies the Baker children's promise under the contract, it does not entirely negate the obligations pledged. The terms of the agreement provided "a reasonably certain basis" for a court "to fashion an appropriate remedy." *Dahar*, 599 A.2d at 220. Moreover, where, as here, the obligations alleged to be illusory have been performed, we find a claim of lack of mutuality of promises on that basis to be unwarranted and unreasonable. To find such a contract void *ab initio*, as Rosser requests, would inversely and exclusively benefit the other party to the contract by permitting that party to not only have obtained the performance bargained for, but by also sanctioning that party's own nonperformance. Accordingly, Rosser's claim in this regard does not merit relief.

¶ 20 Order affirmed.