2017 PA Super 366

| | |
|---|---|
| IN RE: PASSARELLI FAMILY TRUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOSEPH PASSARELLI | No. 3150 EDA 2016 |

Appeal from the Decree September 19, 2016
in the Court of Common Pleas of Chester County
Orphans' Court at No(s): 1516-0101

BEFORE:  GANTMAN, P.J., RANSOM, J., and PLATT, J.[*]

OPINION BY RANSOM, J.:                   **FILED NOVEMBER 16, 2017**

Appellant, John Passarelli, appeals from the decree entered September 19, 2016, terminating an irrevocable trust on the basis of fraud.  We reverse.

We adopt the following statement of facts from the trial court's September 19, 2016 decision and decree, as well as the record.  **See** Trial Court Decree, 9/19/16, at 1-3.  Appellant and Appellee, Margaret Passarelli, were married in November 1998, and have two children.  In 2015, Appellee was diagnosed with early stage breast cancer.  That same year, Appellee agreed with Appellant to meet with an attorney, Michael Perna, to discuss estate planning.  Appellee was unaware that Appellant had previously met

_____

[*] Retired Senior Judge assigned to the Superior Court.

with Attorney Perna and learned of the relationship shortly prior to a meeting to sign estate planning documents.

In May 2015, Attorney Perna, who prepared the trust document, and Appellant, presented it to Appellee. *See* Passarelli Family Trust, 5/21/15, at 1 ("the Trust"). The Trust had been compiled with an inventory of assets provided by Appellee and Appellant, including ownership of two property companies known as Japen Holdings, LLC and Japen Properties, LLP.[1] *See* Notes of Testimony (N.T.), 6/23/16, at 208; *see also* Trust, 5/21/15, Schedule A. Appellee did not ask about the inventory of assets, valued at approximately $13,900,000, nor did she read the Trust documents. *See* N.T. at 18, 32, 56-57, 62-63. Appellee did inquire as to the disposition of trust assets in the event of divorce and was informed by Attorney Perna that the Trust would survive divorce. *See* N.T. at 156-58, 179-180.

On May 21, 2015, Appellee executed the Trust, naming Appellant as trustee, Appellant and Appellee as settlors, and their two minor children as additional beneficiaries; a will; and other estate planning documents. The Trust provided that the trustee would distribute the income to settlors and their children within his discretion. *See* Trust, 5/21/15, at ¶ 2. The Trust further provided that in the event of the death of the settlors, the Trust

---

[1] These businesses were acquired during the marriage with marital property, and were titled in Appellant's name. *See* N.T., 6/23/16, at 208. Both businesses were valued at a combined $4,200,000.00. *See* Trust, 5/21/15, Schedule A.

would be held for the benefit of the children and their living issue. *Id.* at ¶ 4.

Subsequent to executing the Trust, Appellee discovered that Appellant, through the Japen corporations, had purchased two properties in Florida without her knowledge and had included these properties in the corpus of the trust. In September 2015, Appellee discovered Appellant was having an extra-marital affair and filed for divorce. She also discovered that Appellant's girlfriend was living in one of the Florida properties. In October 2015, Appellee filed an emergency petition for special relief to prevent dissipation of the marital assets. In December 2015, the court froze fifty percent of certain accounts included in the corpus of the trust.

On January 19, 2016, Appellee filed a petition to terminate the trust pursuant to 20 Pa.C.S. §§ 7736 and 7740.6. The court held an evidentiary hearing and subsequently issued findings of fact and conclusions of law. The court found that Appellant had concealed the fact that he purchased the Florida properties with marital assets and had failed to disclose this at the time of the Trust's execution. As a result, the court concluded that Appellee had met her burden of proving fraudulent conduct and dissolved the Trust.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The court issued a responsive opinion.

On appeal, Appellant raises the following questions for our review:

1. Whether a finding of fraud may be premised upon a failure to identify each asset contributed to a trust?

2. Whether non[-]disclosure of the assets donated to the trust can be construed as fraudulent misrepresentation where (a) the complaining party had no present interest in the assets conveyed to trust (b) the assets became part of the trust and (c) the complaining party received a benefit from the assets conveyed to the trust.

3. Whether non-disclosure of $470,000 of assets conveyed to a trust is material where the total assets made part of the trust is $13,900,000.

4. Whether a trust agreement should be terminated premised upon fraud where the alleged victim professes to have never read the instrument but it conferred upon the alleged victim a tangible benefit consistent with the estate planning goals she sought to achieve?

Appellant's Brief at 3-4 (unnecessary capitalization, answers, and emphasis omitted).

When reviewing a decree entered by the Orphans' Court,

this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Rosser*, 821 A.2d 615, 618 (Pa. Super. 2003) (internal quotation marks and citations omitted).

Appellant first claims that the court erred in finding that the trust had been created under the inducement of fraud. *See* Appellant's Brief at 9-11. The "fraud" suggested by the court arose from the failure to disclose marital

- 4 -

assets incorporated into the Trust. *Id.* at 11. However, according to Appellant, a finding of fraud may not be premised upon a failure to identify each asset contributed to a trust. *Id.* at 9-11.

With regard to trusts,

[a] trust is a fiduciary relationship; one person holds a property interest subject to an equitable obligation to hold or use that interest for the benefit of another. The language or conduct creating the trust must be clear and unambiguous. A statement will be sufficient evidence of a trust if the beneficiary, the trust property, and the purpose of the trust are set forth therein.

Generally, a trust executed without reservation of power by a settlor to revoke or reform the trust is irrevocable. An irrevocable trust may be rescinded by the settlor, however, if it is demonstrated that the trust was created through fraud, duress, undue influence, or mistake.

*Rebidas v. Murasko*, 677 A.2d 331, 333 (Pa. Super. 1996) (internal citations and quotations omitted). Additionally, Black's Law Dictionary defines an irrevocable trust as one which "cannot be terminated by the settlor once it is created." TRUST, Black's Law Dictionary (10th ed. 2014).[2]

The Pennsylvania Probate, Estates, and Fiduciaries Code delineates the requirements for the creation of a trust as follows:

(1) the settlor has capacity to create a trust;

---

[2] In contrast, the Pennsylvania Probate, Estates, and Fiduciaries Code defines a revocable trust as a trust that is revocable "to the extent the settlor, immediately before the time as of which the determination is made, had the power, acting without the consent of the trustee or any person holding an interest adverse to revocation, to prevent the transfer of the trust property at the settlor's death by revocation or amendment of or withdrawal of property from the trust." *See* 20 Pa.C.S. § 7703.

(2) the settlor signs a writing that indicates an intention to create the trust and contains provisions of the trust;

(3) the trust has a definite beneficiary . . .

(4) the trustee has duties to perform; and

(5) the same person is not the sole trustee and sole beneficiary of the trust.

20 Pa.C.S. § 7732(a). These requirements were met in the creation of the irrevocable trust at issue, and neither party disputes these facts.

However, Appellee contended that because the creation of the trust was induced by fraud, it was voidable. *See* 20 Pa.C.S. § 7736 (noting that trusts may be rescinded if fraudulently induced). The evidence required to "substantiate a request for rescission [of a trust agreement] must be clear, precise, and convincing. The credibility and weight accorded to the testimony and witnesses will not be disturbed except for clear error." *Rebidas*, 677 A.2d at 334 (internal citations and quotations omitted) (discussing the standards for rescission of a trust based upon mistake); *see also* Pa.O.C.R. 33 (noting that fraud must be pleaded with particularity). However, unsubstantiated testimony as to an alleged mistake, for instance, is insufficient to justify the reformation of a trust. *See*, *e.g.*, *In re LaRocca's Trust Estate*, 192 A.2d 409, 414 (Pa. 1963).

Before the Orphans' Court, Appellee argued that the trust had been fraudulently induced, specifically because the property addresses were not listed in the trust's Schedule A. *See* Pet. to Terminate, 1/19/16, at 1-3. In

- 6 -

its analysis, the trial court 1) noted that a challenge to a validity of a trust due to fraud is similar to that of a will challenge, citing in support **Estate of Newhart**, 22 Fid. Rep. 2d 383 n.4 (Pa.Com.Pl.Orph 2002), and 2) adopted the definition of fraud espoused in **In re Paul's Estate**, 180 A.2d 254 (Pa. 1962), and adopted by **In re Estate of Glover**, 669 A.2d 1011 (Pa. Super. 1996). **See** Trial Court Decision (TCD), 9/16/16, at 4. The court concluded that Appellant had committed fraud by failing to inform Appellee of the inclusion of the specific property addresses in the trust. **Id.** at 4-6. We reject this conclusion for a number of reasons.

Initially, we note that we do not find the trial court's reliance on **Newhart** persuasive. **Newhart** is a trial court decision and, therefore, not binding on this Court. **See Coleman v. Wyeth Pharmaceuticals, Inc.**, 6 A.3d 502, 522 n.11 (Pa. Super. 2010). Further, **Newhart** was a case that did not involve fraud, but undue influence in the formation of a will. **See Newhart**, 22 Fid. Rep. 2d 383 n.4. Finally, the text cited for the proposition that will and trust challenges should be treated similarly is a footnote with no supporting authority. **Id.** Thus, we need not accept the trial court's contention that will contests and trust contests should always be treated similarly without further examination of the appropriate law. That said, the same general standards apply. **See Rebidas**, 677 A.2d at 334.

Of deeper concern is the case law relied upon to construct the lower court's definition of fraud, as the analysis is both simplistic and reliant upon dicta. In **Paul**, the appeal questioned whether an attorney had exerted

undue influence upon the testatrix during the formation of the will. *See Paul*, 180 A.2d at 255. There was some evidence that the attorney had provided misinformation as to the value of certain stocks in the estate. *Id.* The Supreme Court of Pennsylvania concluded that the appellants had not proven by clear and convincing evidence that undue influence was exercised. *Id.* at 261-62. Thereafter, the Court found no evidence of fraud, because there was no indication that the testatrix did not know the true value of the stock or would not have made the bequest had she known its true value. *Id.* at 262. At best, this appears to be dicta. The Court did not engage in a true fraud analysis and focused mostly on the undue influence claim. *Id.*

In the other case relied upon by the trial court, the testator left $50,000.00 to a friend, a farm to other relatives, and one million dollars to a veterinary facility. *Glover*, 669 A.2d at 1016. The friend had also misappropriated over a million dollars in funds from the testator's bank account and, accordingly, Glover's relatives argued that the will was fraudulently induced. *Id.* This Court affirmed in part but reversed in part. We concluded that the relatives had failed to offer evidence that, if the testator was aware of the misappropriation, she would not have bequeathed the farm or money to the veterinary facility. *Id.* However, we also concluded that the bequest to the friend who had stolen money was indeed the result of fraud, as it was absurd to think that the bequest would have been made if the testator was aware of the misappropriation. *Id.* at 1016-17. *Glover*, then, adopted *Paul's* definition of fraud wholesale. *Id.* at 1016

(describing Paul as "the only published opinion within the last eighty years" and one of the few cases regarding fraud in the inducement of a will).

Despite the **Glover** court's assertion that there is little precedent discussing fraud in the formation of wills, this assertion is inaccurate. In other cases involving fraud in the inducement of wills, including some decided after **Paul**, our Court has used the following language to define fraud:

> The essence of fraud is deceit intentionally and successfully practiced to induce another to part with property or with some legal right. Fraud is practiced when deception of another to his damage is brought about by a mispresentation of fact or by silence when good faith required expression.

**See In re Thorne's Estate**, 25 A.2d 811, 816 (Pa. 1942); **see also In re McClellan's Estate**, 75 A.2d 595, 598 (Pa. 1950); **In re Reichert's Estate**, 51 A.2d 615, 617-618 (Pa. 1947); **Moser v. DeSetta**, 589 A.2d 679, 682 (Pa. 1991); **Barker v. Rangos**, 324 A.2d 498, 505 (Pa. Super. 1974). Pennsylvania Courts have used this language since the 1940s, citing a 1934 New Jersey Chancery matter. **Thorne's Estate** at 816. However, not all cases discussing fraudulent wills, including **Glover** and **Paul**, adopt this definition.

In common law and in Pennsylvania, the definition of fraud is well-settled. A plaintiff must demonstrate: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *See Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. 2005); *DeArmitt v. N.Y. Life Ins. Co.*, 73 A.3d 578, 591 (Pa. Super. 2013).

Moreover, the uniform law comment to 20 Pa.C.S. § 7736, regarding setting aside a trust, also notes that the section is a specific application of the Restatement (Third) of Trusts and Restatement (Second) of Trusts, which provides that:

> a trust can be set aside or reformed on the same grounds as those which apply to a transfer of property not in trust, among which include undue influence, duress, and fraud, and mistake. This section addresses undue influence, duress, and fraud. For reformation of a trust on grounds of mistake, see Section 415. See also Restatement (Third) of Property: Wills and Other Donative Transfers Section 8.3 (Tentative Draft No. 3, approved 2001), which closely tracks the language above. Similar to a will, the invalidity of a trust on grounds of undue influence, duress, or fraud may be in whole or in part.

20 Pa.C.S. § 7736.[3]

---

[3] Our courts have adopted portions of the Restatement (Second) of Trusts in previous matters. *See*, *e.g.*, *Estate of Weeks*, 402 A.2d 657, 658 (Pa. 1979) (adopting Restatement of Trusts on question of whether a trust may be terminated without the consent of the settlor); *In re Shoemaker*, 115 A.3d 347, 355 (Pa. Super. 2015) (adopting Restatement as to the expression of the doctrine of *cy pres*); *In re Scheidmantel*, 868 A.2d 464 (Pa. Super. 2005) (noting that Pennsylvania follows the Restatement of Trusts regarding exercise of discretion by trustees); *In re Barnes Foundation*, 683 A.2d 894 (Pa. Super. 1996) (adopting the Restatement of Trusts regarding the doctrine of deviation with regard to a charitable trust).

The Restatement (Third) of Property, as cited, provides some guidance regarding the definition of fraud in the context of a donative transfer:

> A donative transfer is invalid to the extent that it was procured by undue influence, duress, or fraud . . . A donative transfer is procured by fraud if the wrongdoer knowingly or recklessly made a false representation to the donor about a material fact that was intended to and did lead the donor to make a donative transfer that the donor would not otherwise have made.

*See* Restatement (Third) of Property (Wills & Don. Trans.) § 8.3 (2003). While there are similarities to the requirements of **Glover** and **Paul**, particularly with the requirements as to the donor, the Restatement contains additional language that imputes further strictures on the wrongdoer, including a knowing and reckless misrepresentation about a material fact. This language tracks with that of common law fraud, specifically the knowing and recklessness requirement; the intent of misleading another into relying upon it; and the resulting injury proximately caused by the reliance. **See Eigen**, 874 A.2d at 1185; **DeArmitt**, 73 A.3d at 591.

We further note that irrevocable trusts are intended to be just that: irrevocable. **See Rebidas**, 677 A.2d at 332. Such a trust is not easily modified or rescinded, absent the varying circumstances discussed above. They provide stability and security. Those entering into a trust do so with the knowledge that the property they seek to protect will be taken care of and available to the beneficiaries at the appropriate time. Indeed, Appellee testified to the same effect: that she wished to ensure the family money stayed within the family. **See** N.T. at 51-52. A will does not provide this

same finality. A will may be amended in favor of new beneficiaries, either by a new will or by codicil. Based on these principles and the discussion above, we are satisfied that the standards required to set aside a trust on the basis of fraud should be stricter than that which case law previously provided. Thus, we conclude that the adoption of the elements of fraud as discussed in the Restatement of Trusts and the Restatement of Property, and as expressed in case law regarding common law fraud, is appropriate in the instant case.

Here, the court concluded that the omission of the addresses of the Florida properties from the Schedule A was a material fact that fraudulently induced Appellee to execute the trust and that Appellee would have acted differently if she had known of the properties' inclusion in the trust. Initially, we note that Schedule A does not identify *any* corporate asset of either Japen Properties or Japen Holdings. The assets of both corporations are included in the trust in their entirety, and are valued at $4,200,000.00. No party asserts that these valuations are incorrect. Nevertheless, we will determine whether, under the definition adopted above, Appellee can show fraud in the inducement of the trust.

There is a six-factored test to establish fraud in the inducement of a trust, and each factor must be met. **See Eigen**, 874 A.2d at 1185; **DeArmitt**, 73 A.3d at 591. First, Appellee was required to demonstrate that a representation was made to her. The "representation" was that the two properties were included as assets of the Japen corporations. Next, Appellee

- 12 -

was required to show the representation was material to the transaction at hand. A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation. **See Eigen**, 874 A.2d at 1186. Appellee avers she would not have executed the trust if she had known that the properties were included. Even if the properties had been listed on the Schedule A, it is unlikely that Appellee would have known of their significance to the marriage at the time of the trust's execution. Giving her the benefit of the doubt, however, we turn to the third requirement.

There was no false statement made. The corporations were included in the trust, listed in the Schedule A, and were accurately valued. It is undisputed that Appellee was unaware of every asset held by the Japen corporations. Here, this does not amount to fraud or a false statement for several reasons. Although not specifically listed on the Schedule A, the properties were included in the trust under the corporation's holdings and combined value of $4,200,000.00. Appellee has identified no duty to fully disclose a corporation's assets when that corporation is added to the corpus of a trust. "Marital assets" and the duty to disclose them are defined by statute in the Divorce Code and Rules of Civil Procedure, 23 Pa.C.S. § 3501, 3505(b); Pa.R.C.P. 1920.33(a).[4] Here, at the time of the execution of the trust, there was no divorce pending and, accordingly, no duty to disclose.

_____

[4] Appellee's arguments regarding undue influence and a confidential relationship are equally misplaced. She abandoned these claims before the
*(Footnote Continued Next Page)*

Perhaps most importantly, Appellee cannot show that she suffered an injury from the "misrepresentation." She has not parted with any property: it is included in the Trust for which she is a settlor and her children are beneficiaries. Her argument that she has suffered an injury because she cannot access these funds in a divorce settlement is misplaced: during the execution of the trust documents, Appellee specifically wished to ensure the security of these assets in the event of a divorce.

Thus, the evidence did not establish that Appellant committed a fraudulent misrepresentation during the execution of the trust. Due to our resolution of this issue, we need not address Appellant's remaining claims. Accordingly, we conclude that the court abused its discretion and committed an error of law in determining that the creation of the Trust was premised upon fraud, and reverse. *See Rosser*, 821 A.2d at 618.

Decree reversed. Jurisdiction relinquished.

President Judge Gantman joins the opinion.

Judge Platt files a dissenting opinion.

*(Footnote Continued)* —————

trial court and may not now raise them before this Court. *See* Pa.R.A.P. 302.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 11/16/2017*