457 A.2d 1302

**In re ESTATE OF Aleksandria KOLTOWICH, Deceased.**

**Appeal of PENNSYLVANIA CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 1982.

Filed March 11, 1983.

518

David K. Lewis, Hermitage, for appellant.

P. Raymond Bartholomew, Sharon, for participating parties.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

Aleksandria Koltowich died on April 23, 1978. Her will, executed on August 29, 1977, was admitted to probate by the Register of Wills on May 8, 1978. In this will Mrs. Koltowich left a thousand dollars each to a nephew and great-nephew, ten thousand dollars to the Seventh Day Adventist church in Sharpsville, Mercer County, and the residue, which amounted to $249,423.32, to Mr. and Mrs. Suman, the proponents of the will.

This will was the second will. An earlier will, executed in 1973, left her entire estate in trust to the Pennsylvania Conference Association of Seventh Day Adventists, with the provision that five thousand dollars each should be given out of the trust to her nephew and great-nephew. The primary beneficiary of this first, unprobated will appealed to Orphans' Court to contest the probate of the second will.

The basis asserted for the contest to the second will was that the signature to the second will was obtained by the exertion of undue influence, deception and fraud on the testatrix. The Orphans' Court, after a nonjury trial, found that the contestant did not produce sufficient evidence of undue influence to cause the shifting, to the proponents of the will, of the burden of showing lack of undue influence, and dismissed the appeal from the probate of the will. It is from this dismissal that the contestant appealed to this court.

Appellant raises three questions: (1) whether the contestant met its burden of proof of the exertion of undue

influence on the testatrix; (2) whether the Orphans' Court erred in considering certain evidence presented by the proponents in its determination as to the burden of proof; (3) whether the proponents met their burden of proof of the absence of undue influence.

 Appellate review of decisions in the Orphans' Court on will contests is of limited scope. *Estate of DiPietro,* 306 Pa.Super. 238, 452 A.2d 532 (1982). The decree of the Orphans' Court will not be reversed unless it appears that the court abused its discretion, that the court's findings lack evidentiary support, that the court capriciously disbelieved the evidence, *Lanning Will,* 414 Pa. 313, 200 A.2d 392 (1964), or that the court committed an error of law, *Estate of Fickert,* 461 Pa. 653, 337 A.2d 592 (1975). The record is reviewed in the light most favorable to the appellee. *Estate of Reichel,* 484 Pa. 610, 400 A.2d 1268 (1979); *Estate of Ziel,* 467 Pa. 531, 359 A.2d 728 (1976). Once the proponent of a will proves that the formalities of execution have been followed, a contestant who claims that there has been undue influence has the burden of proving, by clear and convincing evidence, that (1) a person in a confidential relationship with the testatrix (2) received a substantial benefit under the will (3) from a testatrix of weakened intellect. If this prima facie case of undue influence is shown, the burden then shifts to the proponent of the will to prove affirmatively the absence of undue influence. *Estate of Reichel,* 484 Pa. 610, 400 A.2d 1268 (1979); *Estate of Clark,* 461 Pa. 52, 334 A.2d 628 (1975); *Abrams Will,* 419 Pa. 92, 213 A.2d 638 (1965).

The Orphans' Court found that the contestant failed to meet its burden of satisfying two of the three elements: the confidential relationship between testatrix and beneficiary, and the weakened intellect of the testatrix.

Testatrix was born *circa* 1892 of Ukrainian origin. With her husband she came to the United States from Canada. She was widowed in 1971. Thereafter she sold the farm on which she had lived with her husband, and moved to a house in Greenville. Her next door neighbor there was

Lubie Stoenoff who was of Serbo-Croation origin and approximately the same age. It is Lubie Stoenoff's son and daughter-in-law who are the beneficiaries of the will at issue in this case. The two older women apparently became close friends, communicating with each other in their own Slavic languages. Lubie Stoenoff's daughter-in-law, Susan Suman, the beneficiary and proponent of the will, visited her mother-in-law and testatrix regularly, and then, once her mother-in-law entered a nursing home, continued to visit the testatrix. She did sewing for her mother-in-law and also for testatrix; she took testatrix for drives; she brought testratrix food which she had prepared ahead; she also did assorted personal tasks for testatrix; testatrix and proponent developed a close aunt/niece type of relationship.

With respect to the making of the will, proponent testified that after repeated requests by testatrix that she write up her will for her, in August of 1977 she (proponent) went to see an attorney, named by testatrix, on testatrix's behalf. She made several visits, telling the attorney what testatrix's wishes were with respect to the disposition of her estate. Testatrix herself never went to see the attorney, purportedly because she disliked lawyers, and the attorney never spoke directly to testatrix, purportedly for fear of causing trouble with her co-tenant. The will was drafted. Proponent collected it, paid the lawyer thirty dollars for it and took it to testatrix who put it away. Some days or weeks later, testatrix arranged that Lubie Stoenoff, Darra Jellotts, another Slavic friend, and proponent gather for the signing of the will. Proponent testified to having read the will to testatrix in English and in their native tongue, and that after the will was signed by Lubie and Darra, testatrix put the will away somewhere in her bedroom. Proponent did not see the will again until April of 1978. At that time, testatrix unexpectedly arrived at proponents' house, telling her that she was unwell, and gave proponent assorted papers, including the will, for safe-keeping. A week later, testatrix was taken to a hospital where she died the next day, April 23, 1978. Proponent promptly took care of the

funeral arrangements. The application for probate was filed in Mercer County on April 24, 1978.

Contestant's witnesses testified that testatrix attended the Seventh Day Adventist church regularly. Church members would drive her to and from the church every Sabbath. One of them, in whose house the first will was signed in 1973, frequently took testatrix to her bank, and was aware that she had several bank accounts and a safety deposit box. During her years in Greenville testatrix gave the church a ten thousand dollar donation, but she later refused a request for a further donation.

Proponent testified that testatrix was upset at the church's trying to get her money. Witnesses for contestant testified that testatrix was distressed that she might have unwittingly signed a will presented to her by the proponents.

Proponents testified that testatrix was terrified of being put in a nursing home. There was also testimony that the church people had suggested to testatrix that she sell her house, which she owned as a joint tenant with right of survivorship with a widower, also of Ukrainian origin, with whom she appeared to have rather a quarrelsome relationship, and move to a nursing home. Proponents also testified that they assured testatrix that they would not let her be put in a nursing home.

■ While it is true that proponents received a substantial benefit under the will, thus meeting one of the requirements for a showing of undue influence, we agree with the trial court that the other two requirements, i.e. confidential relationship and weakened intellect, are not met. A confidential relationship exists whenever "circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed [for] in both [situations] an unfair advantage is possible." *Estate of Ziel*, 467 Pa. at 542, 359 A.2d at 734; *Estate of*

*Button,* 459 Pa. 234, 239 n. 4, 328 A.2d 480, 483 n. 4 (1974) (collecting cases).

In cases where the appellate courts have found the requirement of weakened intellect satisfied, the testator/testatrix was in ill health and suffering from confusion, forgetfulness and disorientation. *See e.g., Estate of Clark, supra* (testatrix suffered from hardening of the arteries and its concomitant effect on the brain); *Estate of Button, supra* (lung disease, heart disease, arteriosclerosis, and indications of mental deterioration such as disorientation and confusion). On the other hand, contradicted testimony of occasional confusion or lapses of memory was insufficient to demonstrate clearly and convincingly either a lack of testamentary capacity or the less stringent requirement[1] of weakened mental condition. *Estate of Ziel, supra.*

■ In this case, although there was testimony that testatrix did not drive a car, spoke poor English, and never dialed the telephone, there is nothing in the record that shows that she was mentally lacking in any respect. She appears instead to have been a healthy, strong-willed old lady who attended church regularly, with the help of the church members; who enjoyed chiefly the company of her Slavic friends; who did not want to end her days in a nursing home; and who quarrelled about money-matters with her co-tenant. She apparently had no relationship with the two relatives in Canada—the nephew and great-nephew to whom she left one thousand dollars each. The people who saw the most of her were her co-tenant, the Seventh Day Adventists, and the Slavic friends. Her friend Lubie Stoenoff was of testatrix's generation—late seventies, early eighties. Proponents were roughly twenty years younger, and did a great deal for testatrix. Testatrix left ten thousand dollars to the specific church she had attended regularly, rather than to the Seventh Day Adventists' Conference

---

1. The weakened mental condition which must be shown as an element of undue influence need not amount to testamentary incapacity. *Estate of Ziel,* 467 Pa. at 542, 359 A.2d at 734; *Estate of Clark,* 461 Pa. at 63, 334 A.2d at 633.

Association, and the rest of her money to the people who did the most for her and who visited her the most frequently.

The contestant therefore did not meet its burden of proving by clear and convincing evidence that undue influence was exerted upon the testatrix. This burden not having been met, there was no shifting of the burden to the proponents to prove the lack of undue influence.

■ Appellant asserts that the trial court erred by considering testimony from the proponents' side in its analysis of whether the contestant had met its burden of proof of undue influence. The testimony in question is testimony by Susan Suman and by Darra Jellotts as to the events surrounding the signing of the will. Appellant is correct (1) that once the proponent presents evidence of the formality of probate, the burden of coming forward with evidence of undue influence is on the contestant, *Estate of Clark,* 461 Pa. at 59, 334 A.2d at 631, and (2) that where the issue is whether or not contestant has met its burden the proponent's testimony is not yet to be considered, because the burden of disproving undue influence has not yet shifted to the proponent. *See Clark,* 461 Pa. at 61, 334 A.2d at 632–33. Appellant is also correct that the trial court did consider testimony about the execution of the will in deciding whether or not there was evidence of testatrix's weakened intellect,[2] which was one of the elements of undue influence contestant had to prove.

2. *Estate of Koltowich,* Register's No. 36571, slip op. at 11 (C.P. Mercer County, October 24, 1980), where the court said:

Most obviously, there is a lack of clear and convincing evidence that Mrs. Koltowich was of a weakened intellect on August 29, 1977 when she executed the Will. The Will was read to her in both English and Russian. The Testatrix then examined the Will line by line, stated the Will was proper and executed it in the presence of Luby Stoenoff, Dara Jellots, both of whom witnessed the Will, and Susan Suman. Dara Jellots, who had nothing to benefit, testified in detail concerning the incident.

Mrs. Koltowich then retained the Will from August 29, 1977 until April 16, 1978 when she gave it to Susan Suman because Mrs. Koltowich was about to enter the hospital.

■ The difficulty with contestant's argument is that the testimony by proponent Susan Suman was elicited by counsel for the contestant, who had called proponent as for cross-examination shortly after the beginning of the trial. Susan Suman's testimony therefore was part of contestant's case. Darra Jellotts testified, having been called by the proponents, later on in the trial, in Croatian, through an interpreter. As a subscribing witness to the will, however, she could be called, examined and cross-examined by contestant as well as by proponents, because subscribing witnesses are not regarded as ordinary witnesses, but rather as witnesses of the court. *Szmahl's Estate,* 335 Pa. 89, 6 A.2d 267 (1939); *Plotts' Estate,* 335 Pa. 81, 5 A.2d 901 (1939). Darra Jellotts, therefore, in testifying as to the signing of the will at least, was as much contestant's as proponents' witness. In the particular circumstances of this case therefore we do not find that the court erred in considering the testimony.

Furthermore, as contestant points out in its brief, its case must stand or fall on its own merits. Contestant urges that testatrix felt like a prisoner in her own home and that "her background" and her "fear of nursing homes was such as to amount to a weakening of her intellect and destruction of her free agency." But contestant produced no evidence that does in fact or in law reach the level of weakened intellect.

After a careful review of the trial transcript we agree with the trial court that contestant did not satisfy the two further elements needed to make out a prima facie case of undue influence (weakened intellect and confidential relationship), and we find no error, in this case, in the trial court's having considered the testimony of the two witnesses as complained of by contestant.

The decree of the Orphans' Court is affirmed.

SPAETH, J., files a concurring statement.

526

SPAETH, Judge, concurring:

I should not decide whether appellant established that the testatrix stood in a confidential relationship to appellee or suffered from a weakened intellect when the will was executed, for I am persuaded by reading the record in the light most favorable to appellee that in either event, the resulting presumption that appellee exercised undue influence over the testatrix was rebutted by the testimony of Darra Jellots. N.T. III, 3–23.