669 A.2d 1011

**In re ESTATE OF Frances C. GLOVER, a/k/a Frances C. Cloud, Deceased.**

**Appeal of Rolfe E. GLOVER, III, Rolfe E. Glover, IV, Gordon Ford Glover, and Katherine Cheney Glover.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1995.

Filed Jan. 11, 1996.

510

Stephen R. Bolden, Philadelphia, for appellants.

John A. Jaros, Paoli, for Martin Pierce, Joyce P. Kelly and Tammi P. Rudge, participating parties.

Karen A. Fahrner, Philadelphia, for University of PA, participating party.

Before McEWEN, CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Chester County dismissing appellants' exceptions and rendering the court's decree final. We affirm in part and reverse in part.

The instant action involves appellants' continuing challenge to the probate of Frances C. Glover Cloud's (Frankie) will. Frankie, who passed away on June 7, 1991, was survived by her husband (Edward Cloud), her brother (appellant Rolfe Glover, III), her brother's children (appellants Rolfe Glover, IV, Katherine Cheney Glover and Gordon Glover), and her husband's nieces and nephew (appellees Joyce Pierce Kelly, Tammy Pierce Rudge and Martin Pierce, Jr). At the time of her death, Frankie's estate was valued at approximately eight million dollars.

On June 7, 1991, the Register of Wills of Chester County admitted Frankie's Last Will and Testament, dated June 29, 1989, to probate. At the same time, the Register also granted Letters Testamentary to Lynn Hurley. On December 9, 1991, the validity of an Antenuptial Agreement, under which Cloud received two million dollars, was upheld pursuant to the stipulation of all parties. While the Antenuptial Agreement has never been questioned, the Glovers did appeal the probate of Frankie's will on June 5, 1992. After a hearing, the trial court found that the subscribing witnesses had not actually witnessed Frankie sign the will. As such, the court vacated the Register's Decree of Probate and remanded the case for a further hearing.

On December 2, 1992, the Glovers filed a Caveat with the Register, alleging that the 1989 will was invalid due to undue influence. The Register granted a nonsuit against the Glovers and once again admitted the will to probate and granted Letters of Testamentary to Hurley. The Glovers appealed to the Orphan's Court Division of the Chester County Court of Common Pleas. On June 22, 1993, while the Glovers' appeal was still pending, the court removed Hurley as Executrix and appointed Kevin Hollerin, Esq., and Wilmington Trust Company as Administrators Pro Tem. On November 2, 1994, the Honorable Alexander Endy, who had presided over fifteen days of testimony conducted over a five-month span, issued his Opinion and Decree Nisi dismissing the Glovers' appeal and upholding the validity of the will. Upon the filing of exceptions by the Glovers, the court *en banc*

entered an order dated February 9, 1995 making the Decree Nisi final. This appeal follows.[1]

On appeal, the Glovers raise the following issues for our review:

1. Whether the trial court erred in failing to find that the probated will was altered after its execution.

2. Whether the trial court erred in failing to find that the probated will was executed as a result of undue influence.

3. Whether the trial court erred in failing to find that the probated will was executed as a result of fraud.

Our standard of review in will contests is well settled. We are limited to:

determining whether the findings of fact approved by the court en banc rest on legally competent and sufficient evidence, and whether an error of law has been made or an abuse of discretion committed. It is not our task to try the case anew. The rule is particularly applicable "to findings of fact which are predicated upon the credibility of witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony."

*In re Estate of Bankovich*, 344 Pa.Super. 520, 522–23, 496 A.2d 1227, 1229 (1985) (citations omitted).

Initially, we note that the unscrupulous actions of Hurley lie at the heart of this will contest. Frankie met Hurley at a horse show in 1960 and the women fast became friends. Hurley began assisting Frankie by sorting mail and preparing checks for Frankie's signature. Eventually, Hurley obtained signatory authority over some of Frankie's bank accounts. Consequently, Hurley simply drew on these accounts without Frankie's approval.

---

1. We note that, instantly, the Pierces have filed a motion to quash the Glovers' brief. While we agree that the brief, which contains 69 pages, does violate the page limitation of Pa.R.A.P. 2135, we do not believe that this fact alone should be fatal. Since the brief is not so defective as to preclude effective appellate review, we will not quash the instant appeal. *Commonwealth v. McEachin*, 371 Pa.Super. 188, 191, 537 A.2d 883, 885 n. 1, *alloc. denied*, 520 Pa. 603, 553 A.2d 965 (1988).

In the early 1980's, Frankie employed Richard Ross as her financial advisor. After suffering a stroke in 1984, Frankie entrusted Ross and Hurley with all of her financial affairs. This was a mistake of exceptional proportion. The trial court found that, between 1987 and 1991, Ross and Hurley unscrupulously misappropriated $1,600,000 from Frankie. "The monies acquired by Ross and Hurley from Frankie were used to fund their various businesses, pay personal credit card accounts, mortgages, utility bills, tax liabilities, two Lincoln Towncars, college tuition and provide spending money." Opinion, 11/2/94 at 6. Hurley also peculated funds to pay her divorce settlement and to buy and maintain a horse for her daughter.

In their first claim of error, the Glovers contend that Hurley altered Frankie's will after it had been executed. We disagree. The record supports the following factual findings by the trial court: On June 21, 1989, Ross and Hurley employed the law firm of Eckell, Sparks, Monte, Auerbach and Moses (Eckell, Sparks) to draft a will for Frankie. The will, as drafted by Eckell, Sparks, provided, in pertinent part, that each of the Pierces would receive $5,000, Richard Ross would receive $50,000, the University of Pennsylvania's New Bolton Center [2] would receive $1,000,000 and the residue of Frankie's estate, including her farm, would go to the Glovers. On June 29, 1989, Ross retrieved the will from Eckell, Sparks, picked up Hurley and drove to Frankie's home.

Frankie and Cloud, who had planned to immediately depart on a trip to Alaska in their motor home after the will signing, waited for Ross and Hurley in the company of Frankie's old friend, Jayne Kirkpatrick. The motor home's engine was running as Hurley and Ross arrived. Once inside the motor home, Hurley penned interlineations on the document. Frankie hurriedly reviewed the will, initialled the interlineations and signed her name at the end. Ross then took the document back to Eckell, Sparks, where it was placed in the firm's vault for safe keeping. In May of 1990, Hurley em-

---

**2.** The New Bolton Center is a veterinary facility for horses and farm animals.

ployed Eckell, Sparks to draft Frankie's Antenuptial Agreement. At that time, the law firm provided Hurley with the original and a copy of Frankie's will. Hurley never returned the will and the trial court found that "[t]he document offered for probate on June 7, 1991, had apparently been in her possession from May 1990 to June 1991." Opinion, 11/2/94 at 11.

The 1989 will was probated with the following interlineations intact: the Pierces, not the Glovers, were to receive the farm and Hurley was to receive $50,000. Instantly, the Glovers allege that these interlineations were not the ones that were initialled by Frankie in her motor home on June 29, 1989. Rather, the Glovers contend that Hurley made these alterations and forged Frankie's initials onto the will after its execution.

A party attempting to prove that interlineations on a will have been forged must do so by clear and convincing evidence. *In re Molden's Estate*, 387 Pa. 484, 496–98, 128 A.2d 568, 575 (1957). Moreover, "[w]hile it is true that an appellate court will not disturb the basic findings of a chancellor as affirmed by the court *en banc* when such findings depend upon the credibility of witnesses, the question of whether the evidence relied upon ... is legally sufficient to establish fraud is one of law and may be reviewed." *Id.* (emphasis omitted). Instantly, the trial court found "the testimony of Jayne Kirkpatrick credible as to the fact that Frankie initialled the interlineations before executing the 1989 will." Opinion, 11/2/94 at 19. We find no reason to disturb this decision.

Kirkpatrick, Frankie's companion of twenty-five years, testified that as she sat in the motor home on the morning of June 29, 1989, Frankie told her that Ross and Hurley were coming over with a will for Frankie to execute. N.T., 12/14/93 at 68–69. While Kirkpatrick did not actually read the document, she testified that Frankie initialled interlineations on the will's first and third pages, prior to signing the document. *Id.* at 70–73. Notably, a review of the record reveals that the

interlineations presently in dispute are found on the first and third pages of the will. Moreover, Kirkpatrick also testified that the questioned initials were, in fact, Frankie's. *Id.* at 72–73. This is significant because, after Frankie's left side was rendered incapacitated by a stroke in 1984, Kirkpatrick taught Frankie how to write using her right hand. *Id.* at 73. Thus, we can assume that Kirkpatrick was intimately familiar with Frankie's writing style in 1989. In light of Jayne Kirkpatrick's testimony, we find that the trial court could properly find that Frankie's initials on the 1989 will were genuine and placed upon the will prior to its execution.[3] *See In re Estate of Smith,* 454 Pa. 534, 314 A.2d 21 (1974). Consequently, the Glovers' first allegation of error must fail.

 Next, the Glovers allege that the will was the product of undue influence. It is well established that, once a will has been probated, "a contestant who claims that there has been undue influence has the burden of proof." *Estate of Lakatosh,* 441 Pa.Super. 133, 141, 656 A.2d 1378, 1383 (1995). Moreover, "[t]o do so, the contestant must prove by clear and convincing evidence that there was a confidential relationship, that the person enjoying such relationship received the bulk of the estate, and that the decedent's intellect was weakened." *Estate of Reichel,* 484 Pa. 610, 614, 400 A.2d 1268, 1270 (1979). "It is only after all three elements are satisfied that the burden shifts to the proponent of the will to show the absence of undue influence." *In re Estate of Simpson,* 407 Pa.Super.

---

3. We note that the trial court found "a presumption exists that interlineations on a will were made prior to its execution." Opinion, 11/2/94 at 17. This presumption, however, only exists when the alterations are in the testatrix's own handwriting. *See Gongaware v. Donehoo,* 255 Pa. 502, 510, 100 A. 264, 267 (1917). The Glovers argue that the presumption should not apply because it is undisputed that the interlineations on Frankie's 1989 will were penned by Hurley. We disagree. While Frankie may not have physically authored the interlineations, Kirkpatrick's testimony allowed the trial court to find that the initials immediately preceding the changes were genuine. We find no valid reason to treat interlineations initialled in the testatrix's handwriting any different from interlineations completed in the testatrix's handwriting.

Further, Kirkpatrick's testimony was alone sufficient, without the above presumption, to allow the trial court to find that the interlineations were placed upon the will prior to its execution.

1, 9, 595 A.2d 94, 98, *alloc. denied,* 529 Pa. 622, 600 A.2d 538 (1991).

■ Instantly, the trial court found that the Glovers failed to establish that Frankie suffered from a weakened intellect. The evidence in the record supports this determination. While weakened intellect has never been expressly defined by a Pennsylvania appellate court, it is clear that the "weakened mental condition which must be shown does not rise to the level of testamentary incapacity." *In re Estate of Ziel,* 467 Pa. 531, 542, 359 A.2d 728, 734 (1976). Moreover, "in cases where the appellate courts have found the requirement of weakened intellect satisfied, the testator/testatrix was in ill-health and suffering from confusion, forgetfulness and disorientation." *In re Estate of Koltowich,* 311 Pa.Super. 517, 523, 457 A.2d 1302, 1305 (1983).

■ Instantly, there is no question that Frankie suffered a stroke in 1984 which left her confined to a wheelchair. Evidence of physical infirmities, however, is not enough, alone, to establish weakened intellect. *See In re King's Estate,* 369 Pa. 523, 87 A.2d 469 (1952).

> So long as the mind, like the captain of a stricken ship, is free to dictate direction and course, its decision will not be questioned in law even though the body be crippled with pain and the spirit awry with torment.

*Id.* at 530, 87 A.2d at 473.

■ The Glovers have failed to offer any evidence that Frankie suffered from spells of confusion, forgetfulness or disorientation. In fact, the trial court found that "[a]lmost every witness testified that Frankie was extremely strong-willed, lucid and sharp. There is absolutely no indication that she possessed a weakened intellect." Opinion, 11/2/94 at 26. We find no reason to disturb this determination. *See In re Bloch,* 425 Pa.Super. 300, 304–306, 625 A.2d 57, 60 (1993) (no weakened intellect found where "decedent's friends, neighbors and next-of-kin depicted her as a self-styled, independent person who was not easily swayed in her thinking on a subject about which she felt strongly"); *Estate of Younger,* 352 Pa.Su-

per. 414, 418–20, 508 A.2d 327, 329, *alloc. denied,* 515 Pa. 603, 529 A.2d 1078 (1986) (no weakened intellect found where doctor testified that "[decedent], because of his tenacious and stubborn attributes, *could not be influenced or persuaded to do anything he did not wish to do*"). Consequently, the Glovers' second allegation of error must also fail.[4]

Lastly, the Glovers contend that Hurley fraudulently induced Frankie to execute the 1989 will by failing to disclose that $1,600,000 had been misappropriated from Frankie's bank accounts. "Although undue influence is very much like fraud, the two are not identical." 31 Standard Pennsylvania Procedure 2d § 148:60. "Theoretically, fraud is separate and distinct from undue influence, since, when the former is exercised the testator acts as a free agent but is deceived into acting by false data, and when the latter is exercised the mind of the testator is so overmastered that another will is substituted for his own." P.L.E. Wills § 114.

Despite the above language taken from learned treatises, our research has indicated that scant little case law exists in our Commonwealth regarding fraud in the inducement of executing a will. In fact, the only published opinion within the last eighty years regarding this issue remains our Supreme Court's decision in *In re Paul's Estate,* 407 Pa. 30, 180 A.2d 254 (1962). In *Paul,* the contestants alleged that a beneficiary had misrepresented to the testatrix the value of certain stocks which she then bequeathed to him. In rejecting the contestants' arguments, the court held that "there is no evidence that testatrix did not know the true value of this stock and there is no evidence that ... she would not have made this bequest had she known its true value." *Id.* at 46, 180 A.2d at 262.

---

4. Despite their failure to establish a weakened intellect, the Glovers contend that "even if a testatrix does not have a weakened intellect, undue influence can still be established with respect to her testamentary dispositions[;] ... the burden is upon those asserting undue influence to prove it by clear and convincing evidence." Appellants' brief at 61. We disagree. Once the will contestant fails to prove any one of the three elements required to establish undue influence, his/her claim must necessarily fail. *Bloch,* 425 Pa.Super. at 305–308, 625 A.2d at 60–61.

■ Thus, *Paul* requires that, before a contestant can establish that the execution of a will was fraudulently induced, the contestant must prove that: (1) the testatrix had no knowledge of the concealed or misstated fact, and (2) the testatrix would not have made the same bequest had she known the truth. Instantly, there is no question that Frankie was unaware of the fact that Hurley and Ross were misappropriating massive amounts of funds. Consequently, we turn our focus upon *Paul*'s second requirement.

At trial, the Glovers failed to offer any evidence that, had Frankie been aware of the misappropriation and its consequential reduction in her total wealth, she would not have bequeathed the farm to the Pierces or the $1,000,000 to the New Bolton Center. In fact, a review of the record reveals evidence to the contrary. Four witnesses, including Jayne Kirkpatrick, testified that Frankie had told them of her intention to leave the farm to the Pierces, rather than the Glovers. Additionally, Kirkpatrick also testified that when Frankie's beloved horses would fall ill, she would take them to the New Bolton Clinic for treatment. As such, we cannot find that Frankie was fraudulently induced into making these bequests.

■ The bequest of $50,000 to Hurley, however, is another story. We agree with the trial that it would be "absurd" to suggest that, had Frankie been aware of Hurley's massive misappropriation of funds, this gift would have stood. Hurley's scoundrelly actions would have certainly served to eliminate her from any consideration in Frankie's will. Despite this fact, the trial court found that it was constrained to allow the bequest to Hurley stand. We disagree.

■ In allowing Hurley's bequest to survive, the trial court relied upon this Court's memorandum opinion in *In re Estate of Moir*, 434 Pa.Super. 671, 640 A.2d 476 (1994). This was error. While we acknowledge the scarcity of case law on the subject matter, the law remains that unreported memorandum decisions of this Court have no precedential value. *Boring v. Erie Ins. Group*, 434 Pa.Super. 40, 641 A.2d 1189 (1994). Consequently, such decisions may not "be relied upon

or cited by a Court or a party in any other action or proceeding...." Internal Operating Procedures of the Superior Court of Pennsylvania, Rule 444 B. *See also* Superior Court, Notice to the Bar, 598 A.2d 1324 ("These memorandum opinions are not to be considered as precedent and cannot be cited for any purpose.") As such, we find that the trial court's decision pertaining to the $50,000 bequest to Hurley must fall. Since this bequest was clearly procured through fraudulently inducing Frankie to execute the corresponding interlineation in her will, it must be stricken and the funds must fall into the residuary.

Order affirmed in part and reversed in part. Jurisdiction relinquished.